UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA HOWARD,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON OUTDOORS DIVING, LLC.,<br><br>Defendant. | Case No.:  24cv109-JM-DTF<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*** |

Presently before the court is Defendant Johnson Outdoors Diving, LLC ("Johnson")'s Motion to Dismiss for *forum non conveniens*. (Doc. No. 56). Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. Having considered the Parties' arguments, the evidence, and the law, the court rules as follows.

## BACKGROUND

**I.   Factual Background**

The instant action arises from the death of a Florida resident in a scuba diving excursion, while vacationing at the Sandals Emerald Bay Golf, Tennis & Spa Resort, in The Bahamas. (Doc. No. 1-2 at ¶¶ 19–20).

///

1

24cv109-JM-DTF

On or about May 27, 2002, Decedent and other hotel guests boarded a vessel to participate in a scuba diving excursion operated and managed by former Defendants Unique Vacations, Inc. ("Unique") and Sandals Resorts International, Ltd. ("SRI"). *Id.* at ¶¶ 17, 20. The guests were accompanied by a dive guide and other crew members. *Id.* at ¶ 20. Once on the vessel, Decedent was allegedly provided with a SCUBAPRO buoyancy control device ("BCD") and regulator. *Id.* at ¶ 21. Decedent was then instructed he and three other drivers would be dropped first for a deep drift dive—while another group of divers would be dropped second for a shallower drift dive. *Id.* at ¶ 25.

Over the course of the excursion, Decedent descended to about 100 feet under the surface of the water. *Id.* at ¶ 26. During the dive, however, Decedent began experiencing "buoyancy issues" and "kept ascending towards the surface despite emptying the air in his BCD." *Id.* Decedent allegedly signaled to the dive guide that there was an issue with his pressure gauge. *Id.* at ¶ 27. The dive guide swam over, checked Decedent's pressure gauge, and allegedly grabbed Decedent's BCD—quickly ascending to the surface without an adequate safety stop to allow Decedent's body to decompress from the pressure of the dive. *Id.* A short time after reaching the surface of the water, Decedent fell unconscious. *Id.*

It purportedly took the dive vessel about an hour to reach the first group of divers—including Decedent—and another approximately thirty minutes to pick up the second group of shallow water drift divers. *Id.* at ¶¶ 29–30. By the time the vessel reached the marina, Decedent was pronounced dead. *Id.* at ¶ 31.

## II. Procedural Background

On March 21, 2023, Plaintiff filed this action in Florida state court asserting: (1) a wrongful death/negligence claim against former Defendants Unique and SRI; (2) a wrongful death/negligence claim against Defendant Johnson; (3) a strict liability claim against Defendant Johnson; and (4) a Death on the High Seas Act ("DOHSA") claim, 46 U.S.C. § 30301 *et seq.*, against all Defendants. (Doc. Nos. 1 at 2; 1-2 at 14–28, 30). Of relevance to the instant Motion, Plaintiff's claims against Defendant Johnson are

1  largely predicated upon theories of negligent design, manufacturing, testing, maintenance, and a failure to adequately warn with respect to the SCUBAPRO BCD and regulator used by Decedent. (Doc. No. 1-2 at 20–27).

On May 19, 2023, Defendant removed this action to the United States District Court for the Southern District of Florida on the basis of diversity jurisdiction. (Doc. No. 1 at 2–8). After a period of motion practice, Plaintiff settled its claims as to former Defendants Unique and SRI only. (Doc. Nos. 36; 43; 44). Following the Parties' Joint Motion to Transfer Venue, this case was then transferred from the Southern District of Florida to this court on January 17, 2024. (Doc. Nos. 45; 47; 48).

On February 26, 2024, the Parties filed a Joint Status Report. (Doc. No. 53). On March 18, 2024, Defendant Johnson filed the instant Motion to Dismiss. (Doc. No. 45). Plaintiff filed a Response (Doc. No. 66), and after a brief continuance, Defendant filed a Reply. (Doc. No. 70). The court considers this matter now fully briefed and ripe for resolution.

## LEGAL STANDARD

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). The doctrine "is based on the inherent power of the courts to decline jurisdiction in exceptional circumstances." *Paper Operations Consultants Int'l, Ltd. v. SS Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir. 1975).

A *forum non conveniens* motion brought in federal court is governed by federal law. *Monegro v. Rosa*, 211 F.3d 509, 511–12 (9th Cir. 2000). "To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011); *see also Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011).

"Historically, [the doctrine of *forum non convenien*'s] purpose is to root out cases in which the open door of broad jurisdiction and venue laws may admit those who seek not simply justice but perhaps justice blended with some harassment, and particularly cases in which a plaintiff resorts to a strategy of forcing the trial at a most inconvenient place for an adversary." *Carijano*, 643 F.3d at 1224 (internal quotation marks omitted).

As the Ninth Circuit has set forth, "[t]here are two types of cases in which *forum non conveniens* dismissals have been deemed appropriate in federal court":

> In the first type, now rarely encountered, a foreign or domestic plaintiff chooses a forum with little or no relation to either the defendant or the action in order to disadvantage the defendant. In the second type, now more commonly encountered, a foreign plaintiff chooses the home forum of an American defendant in an action that has little or no relation to the United States in order to take advantage of more favorable American procedural or substantive rules.

*Monegro*, 211 F.3d at 512 (internal citations omitted).

"The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano*, 643 F.3d at 1224. It is, therefore, "an 'exceptional tool to be employed sparingly[.]'" *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal quotation marks omitted). The determination of whether a case should be dismissed under the doctrine "is committed to the sound discretion of the trial court." *Creative Tech., Ltd. v. Aztech Sys. PTE*, 61 F.3d 696, 699 (9th Cir. 1995).

## ANALYSIS

### I.  Adequacy of Forum

The court's "first step" in the *forum non conveniens* analysis "is the determination of whether an adequate alterative forum exists." *Creative*, 61 F.3d at 701. The first requirement of this inquiry asks whether Defendant has met its burden of establishing The Bahamas exists as an *alternative* forum. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22; *Dole*, 303 F.3d at 1118 ("An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum.").

Here, Defendant asserts that: (1) it consents to be submitted to the jurisdiction of the courts of The Bahamas; (2) it will not challenge service of process in The Bahamas; and (3) it will not raise any statute of limitations defense for the purposes of this action. (Doc. Nos. 28-5 at ¶ 2; 56-1 at 10). In light of the above representations, the court finds Defendant has sufficiently established the first requirement that The Bahamas is a viable alternative forum. *See Carijano*, 643 F.3d at 1225 (district court correctly determined defendant's "voluntary submission to service of process" and consent to jurisdiction was sufficient for meeting first requirement); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (same).

Second, the court must determine whether Defendant has met its burden of establishing The Bahamas is an *adequate* forum. "This showing requires the defendant to establish that the foreign forum's laws provide potential redress for the injury alleged; the fact that the substantive law may be less favorable is relevant only if it would completely deprive plaintiffs of any remedy or would result in unfair treatment." *Tuazon*, 433 F.3d at 1178; *see Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001) ("[A] foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong.").

Here, Defendant relies on the unrebutted declarations of Marco Turnquest and Viola C. Major in contending The Bahamas is an adequate forum. (Doc. No. 56-1 at 10). Mr. Turnquest and Ms. Major both aver they have practiced extensively in Bahamian courts. (Doc. Nos. 28-6 at ¶¶ 2–5; 56-4 at ¶¶ 2–4). Both declarations provide an in-depth exploration of the Bahamian judicial system and Bahamian law. Mr. Turnquest opines Plaintiff's claims would be recognized as valid causes of action in The Bahamas and both pecuniary and non-pecuniary damages would be available remedies. (Doc. No. 28-6 at ¶¶ 17-19, 24–25). Similarly, Ms. Major opines Plaintiff's claims would be recognized in

The Bahamas as a common law negligence and fatal accidents claim and Bahamian courts permit claims for compensatory damages, pain and suffering, loss of amenities, loss of income, and punitive damages. (Doc. No. 56-4 at ¶¶ 18, 30).

In light of these unrebutted declarations, Defendant has sufficiently proffered evidence Bahamian law would provide a remedy for the wrong(s) alleged in Plaintiff's complaint. As the Ninth Circuit has stated, the requirement that an alternative forum be adequate is "easy to pass; typically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Tuazon*, 433 F.3d at 1178 (internal quotation marks omitted); *see also Umeda v. Tesla Inc.*, No. 20-cv-02926-SVK, 2020 U.S. Dist. LEXIS 175286, at *15 (N.D. Cal. Sep. 23, 2020) (finding threshold requirement met where defendant submitted declaration Japanese law provided redress for injuries alleged in plaintiff's complaint); *R & R Sails, Inc. v. Ins. Co. of the Pa.*, No. 07-CV-0998 H (POR), 2008 U.S. Dist. LEXIS 128683, at *6 (S.D. Cal. Jan. 17, 2008) (finding threshold requirement met where defendant proffered evidence Australian law would provide remedy for wrong alleged).

For the reasons stated above, the court holds Defendant has satisfied its burden of demonstrating the existence of an adequate, alternative forum in The Bahamas.

## II. Balance of Private and Public Interest Factors

The court must next balance both private and public interest factors to determine if they favor dismissal in this case. *See Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769 (9th Cir. 1991) ("Given the existence of an adequate alternative forum, a district court *must* consider the balance of private and public interest factors to determine whether to dismiss on grounds of *forum non conveniens*.") (italics added). In balancing these factors, the court should be mindful "the central focus of any *forum non conveniens* inquiry is ensure that the trial is convenient[.]" *Piper*, 454 U.S. at 256.

### A. Deference to Plaintiff's Choice of Forum

At the outset, the Parties disagree as to the proper degree of deference the court should accord to Plaintiff's "choice of forum." Plaintiff contends because she is a United

States citizen seeking redress in a United States court, her choice of forum is entitled to significant deference. (Doc. No. 66 at 10–14). In contrast, Defendant contends because Plaintiff is not a resident of California and did not originally choose to file suit in this District, Plaintiff's choice is entitled to little deference. (Doc. No. 70 at 2–4).

"Ordinarily, a plaintiff's choice of forum will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Lueck*, 236 F.3d at 1145. However, this deference is "far from absolute." *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) (internal quotation marks omitted). "[A United States] citizen plaintiff is entitled to less deference in [her] choice of forum if [she] does not reside in that forum." *Id.*

Here, Plaintiff is a resident of Florida, not California. (Doc. No. 1-2 at ¶ 3). Plaintiff also did not originally file suit in this District. Instead, as already noted above, Plaintiff originally filed suit in Florida state court. (Doc. Nos. 1; 1-2). This case was then removed to the Southern District of Florida and subsequently transferred to this District. (Doc. Nos. 1; 48). Nevertheless, although Plaintiff did not originally choose to file suit in this District, Plaintiff *did* seek to secure Defendant's agreement to transfer this case to California. (Doc. No. 66-2).

Defendant is correct that Plaintiff would stand in a stronger position in this case were she a California resident who chose to file in California. Even so, Plaintiff is still a citizen and resident of the United States choosing to pursue her claims in a United States forum. Her choice of forum is, therefore, accorded deference. *See Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009) ("[W]here the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof," and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (internal quotation marks and citations omitted); *see also Neuralstem, Inc. v. ReNeuron, Ltd.*, 365 F. App'x 770, 771 (9th Cir. 2010) ("[A] United States citizen's decision to bring suit in a state in which the plaintiff is not a resident is

still entitled to deference."); *Monegro*, 211 F.3d at 514 ("[L]ess deference is not the same thing as no deference.").

### B.   *Private Interest Factors*

In the Ninth Circuit, courts consider the following private interest factors: "(1) the residence of the parties and witnesses, (2) the forum's convenience to the litigants, (3) access to physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses to trial, (6) the enforceability of the judgment, (7) any practical problems or other factors that contribute to an efficient resolution." *Tuazon*, 433 F.3d at 1180. In applying these factors, the court looks to "any or all of the above factors which are relevant to the case before it, giving appropriate weight to each." *Id.*

#### 1.   *Residence of the Parties*

The court first looks to the residence of the Parties. Plaintiff is a resident of Florida, but by seeking Defendant's agreement to transfer the case to California and opposing Defendant's Motion to Dismiss for *forum non conveniens*, has indicated an agreement to travel to this District for trial. (Doc. Nos. 1-1 at ¶ 16; 66; 66-2). Defendant Johnson is a limited liability company headquartered in California. (Doc. No. 70 at 5). Defendant is, therefore, "properly considered a resident of the local forum." *Carijano*, 643 F.3d at 1230. This factor weighs against dismissal. *See id.*; *see also Monegro*, 211 F.3d at 513 (noting a defendant's home forum is "quintessentially convenient" for the defendant.).

#### 2.   *Evidentiary Considerations*

The court next looks to the location of potential witnesses and evidence in this case. In so doing, the court's focus does not "rest on the number of witnesses or quantity of evidence in each locale." *Lueck*, 236 F.3d at 1146. Rather, the court evaluates "the materiality and importance of the anticipated evidence and witnesses' testimony and then determine[s] their accessibility and convenience to the forum." *Id.* (internal quotation marks omitted).

Here, nearly all of the events relevant to this action occurred outside of the Southern District of California. The scuba diving excursion underlying this dispute occurred in The Bahamas. (*See* Doc. No. 1-2 at ¶¶ 17, 20). There is no evidence the dive boat captain, any of the boat's crew members, or the dive guide are located in this District. The same holds true for witnesses familiar with the storage and maintenance of the equipment used by Decedent. Rather, it would be logical to assume these individuals are located in The Bahamas. The initial investigation of Decedent's accident was done by the Royal Bahamas Police Force ("RBPF") in The Bahamas. (Doc. No. 66-4). The scuba diving equipment Decedent used is still in the RBPF's possession in The Bahamas. (Doc. No. 66-6). The design, engineering, manufacturing, assembly and testing of SCUBAPRO BCDs and regulators also does not occur in this District. Instead, SCUBAPRO BCDs and regulators are designed, tested, manufactured, and assembled by Scubapro Europe S.R.L., a separate business entity, and relevant witnesses and evidence are located in Italy, China, or South Africa. (Doc. No. 77 at ¶¶ 3, 6–7).

The court is uncertain whether it would be able to compel foreign witnesses to trial in this District. It is likely this would be beyond the court's authority. *See* Fed. R. Civ. P. 45. Nevertheless, critically, Defendant has also not alleged nor shown any foreign witnesses are *unwilling* to testify. "[T]he initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify." *Carijano*, 643 F.3d at 1231. The fact this court would not be able to compel certain non-party witnesses to testify in California does not weigh in favor of dismissal where there is no evidence they are *unwilling* to do so. *See Powell-Willingham v. Joint Aid Mgmt. USA*, 789 F. App'x 661, 662 (9th Cir. 2020) ("Absent any affirmative showing as to unwillingness, defendants failed to carry their burden to show that this factor favored dismissal."); *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("When no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor."); *Randhawa v. Skylux Inc.*, 2013 U.S. Dist. LEXIS 93872, at *10–11 (E.D. Cal. July 3,

2013) ("[D]efendant does not assert that its witnesses would be unwilling to testify in California.") *aff'd* 629 F. App'x 802, 804 (9th Cir. 2015) ("The district court . . . conceded that it was uncertain as to whether compulsory process existed, but highlighted that defendants never indicated that witnesses would be unwilling to testify[.]").

This is also not a case where *every* material witness is located outside the District or outside the United States. Defendant represents it is the "warehousing and sales entity" that distributes SCUBAPRO equipment from its "principal place of business" in El Cajon, California. (Doc. No. 77 at ¶ 8). Any witnesses or evidence as to Defendant's role in the distribution of the allegedly defective products, would therefore, be located in California. The divers who accompanied the Decedent are located in the United States— including one in Virginia (Dr. Ethan Silver) and two in Florida (Russell and Mauren Cadarel). (Doc. No. 66 at 19). As to potential witnesses located in Italy, China or South Africa, such witnesses would be required to travel regardless of whether the trial occurred in this District or The Bahamas. Indeed, it is likely both Parties will "be forced to depend on deposition testimony in lieu of live testimony for at least some witnesses." *Bos. Telecomms. Grp.*, 588 F.3d at 1210.

Moreover, if liability is established, witnesses regarding the nature and extent of damages will hale from the United States, not The Bahamas. For example, Decedent's former supervisor, who Defendant contends would be a witness in Decedent's damages case, is a resident of Utah, and is unwilling to travel to The Bahamas to testify. (Doc. Nos. 66 at 20; 66-5 at ¶¶ 2–5).

In sum, the court rejects Defendant's argument that "the vast majority of witnesses . . . are located in the Bahamas." (Doc. No. 56-1 at 12). While first responders, medical, funeral home, and resort security personnel are presumably Bahamain residents, the material facts presented in connection with this Motion do not reveal any significant dispute as to cause of death or other issues that would necessitate calling a substantial number of witnesses in these categories—as Defendant suggests might be the case here. *Id.* at 14–15.

Accordingly, under these circumstances, the court does not find the location of potential witnesses in this case to strongly weigh in favor of dismissal.

The court reaches the same conclusion with respect to the location of physical evidence in this case. While it is true the SCUBAPRO BCD and regulator used by Decedent is currently in the RBPF's possession, the RBPF appears willing to have the Parties inspect this equipment in The Bahamas or have it transported to the United States. (Doc. No. 66 at 22–23; 66-1 at ¶ 8).

As to the site of the accident, any site visit would obviously be far simpler for a trier of fact residing in The Bahamas. However, "given the availability of photographs, models and video, it is far from certain that an actual visit to the [site] would be required at the trial of this matter such that such a time-consuming process would be used." *Nakaki v. Caesars Entm't Operating Co.*, No. LA CV12-03942 JAK (AGRx), 2012 U.S. Dist. LEXIS 197016, at *21–22 (C.D. Cal. Aug. 24, 2012); *see also Bruemmer v. Marriott Corp.*, Case No. 90 C 4190, 1991 U.S. Dist. LEXIS 2514, at *11–12 (N.D. Ill. Feb. 28, 1991) ("[T]he use of video-cassette tapes, models and photographs can provide the [trier of fact] with an accurate representation of the accident site. These are common means of providing jurors with representations of accident sites, which are often used to avoid the time and expense of transporting jurors to the actual site.").

Moreover, the fact that some evidence may be located in The Bahamas and the court may "necessarily face some difficulty in securing evidence from abroad" does not "necessarily justify dismissal." *Bos. Telecomms. Grp.,* 588 F.3d at 1208. The Bahamas is a non-member signatory of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). *See* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last accessed June 24, 2024). Consequently, the Parties will likely be able to obtain evidence through international third-party discovery procedures. At the very least, Defendant has not shown any attempts to pursue discovery under the Hague Convention or other alternative means would be ineffectual. *See Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774

11

MMM (CWx), 2006 U.S. Dist. LEXIS 96772, at *50 n.97 (C.D. Cal. Sep. 11, 2006) ("[W]hile the court recognizes that it may be more difficult to obtain evidence under the Hague Convention than under the Federal Rules of Civil Procedure, this does not make litigation in this district overly burdensome or inconvenient for the parties.").

Finally, again, *some* of the relevant physical evidence in this case appears to be in Defendant's possession—including documentary evidence regarding the distribution of SCUBAPRO BCDs and regulators. (Doc. No. 77 at ¶ 8). To the extent evidence regarding the actual design, manufacture, and assembly of this equipment is located in Italy, China or South Africa, the difficulty of obtaining those documents for a lawsuit in The Bahamas is likely to be similar—or perhaps even greater—than the difficulty of obtaining them for the purposes of an action in California. *See Bos. Telecomms. Grp., Inc.*, 588 F.3d at 1208 (noting the difficulty of obtaining documents from Colorado, the Netherlands and Israel "for a lawsuit in Slovakia is likely to be equal to, or perhaps even greater than, the difficulty of obtaining them for purposes of an action in California.").

The court acknowledges because it cannot compel production of much of the foreign evidence, whereas Defendant controls, and can bring evidence in its possession to The Bahamas, these evidentiary considerations weigh in favor dismissal. *See Lueck*, 236 F.3d at 1147 ("[B]ecause the district court cannot compel production of much of the New Zealand evidence, whereas the parties control, and therefore can bring, all the United States evidence to New Zealand, the private interest factors weigh in favor of dismissal.").

Nevertheless, in sum, when considering the evidentiary factors in this case as a whole, the court finds them largely neutral.

### 3. *Enforceability of the Judgment*

The court next turns to the "enforceability of judgment" factor. Plaintiff contends a judgment from this court could be enforced against the Defendant without "any foreseeable obstacles," but enforcing a judgment from a court in The Bahamas against

Defendant would be "nearly impossible." (Doc. No. 66 at 25–26). The court does not agree.

As Defendant correctly notes, California has adopted the Uniform Foreign-Country Money Judgments Recognition Act. *See* CAL. CIV. PROC. CODE § 1713 *et. seq*. "California's Uniform Act provides that the courts of California 'shall recognize a foreign-country judgment' for money damages that is final, conclusive, and enforceable where rendered, except if one or more of the mandatory grounds for non-recognition enumerated in § 1716(b), or discretionary grounds for non-recognition enumerated in § 1716(c), applies." *Ohno v. Yasuma*, 723 F.3d 984, 991 (9th Cir. 2013). The Act "governs recognition and enforcement actions commenced on or after January 1, 2008." *Corso v. Rejuvi Lab., Inc. (In re Rejuvi Lab., Inc.)*, 26 F.4th 1129, 1133 (9th Cir. 2022). As such, a judgment from a court in The Bahamas would presumably be enforceable in California—where Defendant has assets.

Even so, Defendant has not stipulated it will abide by a final judgment rendered by a Bahamian court. As such, Defendant remains free to attack any Bahamian judgment under any of the mandatory or discretionary grounds for non-recognition outlined in the foreign judgments statute. For these reasons, the court finds the enforceability of judgments factor to be neutral as to dismissal. *See Carijano*, 643 F.3d at 1231–32 (noting defendant had not agreed any Peruvian judgment could be enforced against it in the United States or anywhere else it held assets and was, therefore, still free to attack the judgment); *see also Hubei Gezhouba Sanlian Indus., Co. v. Robinson Helicopter Co.*, 425 F. App'x 580, 581 (9th Cir. 2011) (failure to pay judgment "clearly inconsistent" with *foreign non conveniens* motion where defendant had stipulated to California court it would abide by the foreign judgment).

### C. Public Interest Factors

In addition to the private interest factors, the court considers "five public interest factors: (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and

(5) the costs of resolving a dispute unrelated to a particular forum." *Tuazon*, 433 F.3d at 1181.

### 1. Local Interest

The court first looks to the local interest of each potential forum in the instant lawsuit. In considering this factor, the court asks "only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tuazon*, 433 F.3d at 1182; *see Carijano*, 643 F.3d at 1232 ("The local interest factor has the different aim of determining if the forum in which the lawsuit was filed has its own identifiable interest in the litigation[.]").

Here, California has a "significant interest in providing a forum for those harmed by the actions of its corporate citizens." *Carijano*, 643 F.3d at 1232; *see also Stangvik v. Shiley Inc.*, 54 Cal. 3d 744, 756 n.10 (1991) (noting "California's interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions."). This extends to an interest in ensuring products distributed from within the state are safe. For example, "under California product liability law, a plaintiff can recover from the distributor of a defective product, and not just the product's manufacturer." *Becraft v. Ethicon, Inc.*, No. C 00-1474 CRB, 2000 U.S. Dist. LEXIS 17725, at *8–9 (N.D. Cal. Nov. 2, 2000); *see also e.g.*, *Hinds v. Zimmer, Inc.*, No. 1:09cv0442 AWI DLB, 2009 U.S. Dist. LEXIS 48565, at *6 (E.D. Cal. May 29, 2009) ("[I]t is well settled under California law that distributors are proper defendants in products liability cases."); *Bostick v. Flex Equip. Co., Inc.*, 147 Cal. App. 4th 80, 88 (2007) ("The doctrine of strict products liability imposes strict liability in tort on all of the participants in the chain of distribution of a defective product.").

On the other hand, The Bahamas also clearly possesses interests in: (1) ensuring products distributed within its borders are safe; (2) holding businesses operating within its borders accountable; and (3) ensuring foreign tourists are treated fairly. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 665 (9th Cir. 2009).

If anything, each venue, California and The Bahamas, has a significant interest relatively equal to the other. For these reasons, this factor does not weigh in favor of one jurisdiction or the other.

### 2.   *Judicial Considerations*

The remaining public interest factors "all relate to the effects of hearing the case on the respective judicial systems." *Carijano*, 643 F.3d at 1233. These factors are "concerned with how well-equipped a jurisdiction is to handle a case." *Id.* at 1232.

The court first looks to each proposed forum's familiarity with the governing law. The Parties contend this factor is neutral. (Doc. Nos. 56-1 at 17; 66 at 28; 70 at 10). The court agrees. Under Ninth Circuit precedent, "the choice of law analysis is only determinative" in a *forum non conveniens* determination "when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." *Lueck.*, 236 F.3d at 1148. "The purpose of a choice of law inquiry in a *forum non conveniens* analysis is to determine if one of these statutes would apply." *Id.* In cases such as this one, "[w]here no such law is implicated, the choice of law determination is given much less deference on a *forum non conveniens* inquiry." *Id.* As the choice of law analysis in this case, no matter the conclusion, would not affect the court's ultimate decision on Defendant's *forum non conveniens* motion, the court finds this factor neutral. *Id.* ("Because there is no arguably applicable law that would end the *forum non conveniens inquiry* [in this case], . . . no potentially dispositive choice of law determination need have been made.") (internal quotation marks omitted).

The court next looks to whether the trial in this case may be speedier in The Bahamas. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."). Defendant proffers the declaration of Mr. Turnquest, who opines a civil case in The Bahamas, "if diligently prosecuted" should be completed within approximately eighteen months. (Doc. No. 28-6 at ¶ 23). However, Defendant also proffered the declaration of Ms. Major, who attests

15

1  trial could take up to three years from the time of filing in The Bahamas—a significantly
2  different estimate from the one given by Mr. Turnquest. (Doc. No. 56-4 at ¶ 3).

3  Meanwhile, Defendant notes Federal Court Management Statistics suggest the median time for a disposition at trial in civil cases in this District is approximately 41.8 months. *See* Caseload Statistics Data Table, Table C-5, U.S. District Courts—Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending December 31, 2023 https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last accessed June 24, 2024). Nevertheless, the court notes in its experience that the median time to trial in this District can vary significantly depending on a variety of factors including the circumstances of the case, each particular Judge's docket, how long the case has been pending, as well as any exigencies.

12  For these reasons, the court finds this factor weighs neither for nor against dismissal. Indeed, any finding the court could make at this point with respect to court congestion would be subject to speculation, predicated upon substantially divergent estimates proffered by Defendant's declarants, and various factors that may affect time to trial in this District, without any statistical evidence as to the actual differences between the two forums.

18  Finally, Defendant contends that the burden on local courts and costs of resolving a dispute are substantial in this case—given California's limited local interest in resolving this dispute. (Doc. Nos. 56-1 at 17–18; 70 at 9–10). The court does not agree. The court has already substantively outlined California's local interest in this matter above. Defendant does not dispute it distributes the equipment at issue in this case from its headquarters in California. As the Ninth Circuit has noted, in this modern age, courts "should expect to face controversies arising from activities originating in the United States but played out in distant lands." *Tuazon*, 433 F.3d 1163; *see also Carijano*, 643 F.3d at 1224 ("The mere fact that a case involves conduct . . . from overseas is not enough for dismissal."). The court further rejects any arguments a California jury would have difficulties addressing issues regarding equipment designed and manufactured in

Italy, China, and South Africa, distributed in California, and then used in The Bahamas. "[J]uries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages." *Tuazon*, 433 F.3d at 1181–82.

For the reasons stated above, the court finds the public interest factors to be largely neutral.

### D. Weighing the Factors

In weighing the public and private interest factors in this case, the court must hold Defendant "to its burden of making a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Carijano*, 643 F.3d at 1236 (internal quotation marks omitted). Here, Defendant has not met this burden.

The instant case is one where relevant witnesses and evidence are likely "scattered around the globe." *Bos. Telecomms. Grp.*, 588 F.3d at 1210. Plaintiff is a resident of Florida. Defendant is a resident of California. The accident in question occurred in The Bahamas. The equipment at issue was distributed in California, but manufactured and designed in Italy, China, and South Africa. There is no perfect forum for Plaintiff's claims. The doctrine of *forum non conveniens* does not, however, even compel Plaintiff "to choose the optimal forum for [her] claim." *Dole*, 303 F.3d at 1118. At this stage of the proceedings, the court does not find the private and public interest factors to weigh strongly enough in favor of dismissal to justify the use of the "exceptional" tool of a *forum non conveniens* dismissal. As the court noted above, it must also accord deference to Plaintiff's choice to litigate her claim in the United States.

For all of the above reasons, the court finds the "oppression and vexation" to Defendant to litigate this case in this forum is lower than the convenience of going forward with a dispute between a United States citizen and a corporate entity headquartered in California in a California forum.

///

## CONCLUSION

For the reasons stated above, the court **DENIES** Defendant's Motion to Dismiss for *forum non conveniens.*

**IT IS SO ORDERED.**

DATED: June 26, 2024

_____
JEFFREY T. MILLER
United States District Judge